IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEAN LAND,                                              Case No. 14-cv-1017-pp

        Plaintiff,

v.

CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,

        Defendant.

**DECISION AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 28)**

**I.    INTRODUCTION**

On August 19, 2014, plaintiff Jean Land filed a civil complaint alleging that Verizon Wireless (VAW) LLC violated the Fair Credit Reporting Act by failing to accurately reflect the status of a debt on the plaintiff's credit report. Dkt. No. 1. On March 30, 2015, the defendant (Cellco Partnership d/b/a Verizon Wireless, formerly known as Verizon Wireless (VAW) LLC) filed a motion for summary judgment. Dkt. No. 28. Although the motion focuses on how the plaintiff treated the debt in her Chapter 13 bankruptcy case, the allegation in the complaint is that the defendant intentionally or willfully failed to correct the status of the debt as a result of the bankruptcy proceeding. Because the court finds that there are disputed issues of material fact regarding whether the defendant intentionally or willfully failed to correct the information in the plaintiff's credit report, the court will deny the motion for summary judgment.

1

## II.   FACTS

### A.   The Plaintiff's Chapter 13 Bankruptcy

The plaintiff filed a Chapter 13 bankruptcy petition on October 16, 2008. In re Land, Case No. 08-31324 (Bankr. E.D. Wis.). On Schedule G, Executory Contracts and Unexpired Leases, the plaintiff marked the box that said she had no executory contracts or unexpired leases, and put "None" in the field for the name and address of parties to leases or contracts. Bankr. Dkt. No. 1 at 17. Two months after the petition date, on December 2, 2008, the plaintiff filed an amended Schedule G, indicating that she was assuming a lease with Toyota Financial Services, but mentioning nothing about any contract or lease she had with the defendant. Bankr. Dkt. No. 13.

On her original Schedule F, Creditors Holding Unsecured Non-Priority Claims, the plaintiff *did* list the defendant. Bankr. Dkt. No. 1 at 16. She listed the defendant's address as, "Bankruptcy Department, 777 Big Timber Road, Elgin, IL 60123." Id. She indicated that she owed the defendant $300 in "utility bills/cellular service," and that the debt arose in 2008—in other words, pre-petition. Id.

With the petition, the plaintiff filed a Chapter 13 plan. Bankr. Dkt. No. 4. The Bankruptcy Noticing Center ("BNC") notifications indicate that the defendant received notice of the plan by electronic transmission on October 19, 2008. Bankr. Dkt. No. 7. The plan had an effective date of November 20, 2008, included monthly payments of $340 for sixty months, id. at 2, and indicated

2

that it would pay "not less than 21% on unsecured claims or $9,553.80 whichever is greater," id. at 6. The defendant did not object to confirmation of the plan.

The meeting of creditors took place on November 20, 2008, Bankr. Dkt. No. 10, and the Form B9-I set a February 18, 2009 deadline for creditors to file proofs of claim, Bankr. Dkt. No. 5. The BNC notifications indicate that the defendant received electronic notice of the meeting of creditors on October 18, 2008. Bankr. Dkt. No. 6. The defendant never filed a claim in the bankruptcy, and did not appear on the claims register. The creditor mailing matrix included a listing for "Verizon Wireless, 777 Big Timber Road, Elgin, IL 60123-1401."

The bankruptcy court entered an order confirming the plan on January 20, 2009. Bankr. Dkt. No. 16. On October 23, 2013, the Chapter 13 trustee filed a notice of completion of plan. Bankr. Dkt. No. 23. The court entered an order discharging the debtor on October 24, 2013. Bankr. Dkt. No. 24. The BNC notifications indicate that the defendant received notice of the discharge by electronic transmission on October 26, 2013. Bankr. Dkt. No. 25.

The trustee's final account shows the defendant as a member of the unsecured class with a scheduled claim of $300. The final account shows $0.00 in principal and interest paid to the defendant. Bankr. Dkt. No. 27.

B.  The Events that Led to the Civil Complaint

On August 19, 2014, the plaintiff filed the complaint in this court. Dkt. No. 1. The complaint indicates, "This lawsuit arises from a credit report dispute," and that the plaintiff brought the suit under the Fair Credit Reporting

Act. Dkt. No. 1 at ¶¶1-2. At some point in the past, the complaint alleged, the plaintiff had "acquired a copy of her credit file," as part of the home mortgage process. Id. at ¶14. When reviewing the file, she noticed that the file included a balance due and owing to the defendant. Id. at ¶15. The plaintiff thought that her Chapter 13 discharge had resolved that debt. Id. at ¶16. When the plaintiff disputed the debt with the Consumer Reporting Agencies, the defendant "responded by verifying that a balance was due and owing." Id. at ¶¶20-21. Despite that response, when the plaintiff contacted the defendant directly, "a representative confirmed that in their system no balance was showing and that the debt had been included in a Chapter 13 bankruptcy." Id. at ¶23. The plaintiff alleged that the past-due balance on her credit report had kept the plaintiff from closing on a home. Id. at ¶24.

### III. PROCEDURAL HISTORY

The August 19, 2014 complaint alleged that "[d]efendant Verizon prepared, compiled, issued, assembled, and communicated inaccurate, erroneous, and blatantly false consumer information regarding [the plaintiff], as defined in the Fair Credit Reporting Act." Dkt. No. 1 at ¶26. The plaintiff alleged that the defendant "violated 15 U.S.C. §1681s-2(b) by failing to conduct a reasonable investigation with respect to . . . disputed information, by failing to review all relevant information available, and by failing to update [the plaintiff's] credit report." Id. at ¶27.

On September 23, 2014, the parties stipulated to amend the pleadings to change the name of defendant Verizon Wireless (VAW) LLC to Cellco

4

Partnership d/b/a Verizon Wireless, Dkt. No. 15; on September 26, 2014, the court approved the stipulation and made the substitution, Dkt. No. 18. On September 25, 2014, the defendant answered the complaint. Dkt. No. 16. On March 30, 2015, the defendant filed a motion for summary judgment, Dkt. No. 28, and an accompanying brief, Dkt. No. 31. On May 11, 2015, the plaintiff responded to the motion for summary judgment, Dkt. No. 48, and the defendant replied on May 26, 2015, Dkt. No. 53.

**IV.    SUMMARY JUDGMENT STANDARD**

Fed. R. Civ. P. 56 governs motions for summary judgment. It allows a party to "move for summary judgment, identifying each claim or defense . . . on which" the party seeks summary judgment. Fed. R. Civ. P. 56(a). If the moving party can show "that there is no genuine dispute as to any material fact" and that party "is entitled to judgment as a matter of law," the "court shall grant summary judgment," stating "on the record the reasons for granting or denying the motion." Id.

To prove that there are no genuine, factual disputes, the moving party must support the motion with "particular parts . . . in the record," such as "depositions, documents . . . affidavits or declarations, stipulations," etc. Fed. R. Civ. P. 56(c)(1)(a). The moving party may show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(b). The court, however, "may consider other materials in the record," and not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

5

In 1986, the Supreme Court decided two cases which provided guidance to the lower courts in determining whether genuine issues of material fact exist. First, in Anderson v. Liberty Lobby, 477 U.S. 242 (1986), the Court noted "that a mere existence of some alleged factual dispute between the parties will not defeat" a motion for summary judgment. Id. at 247-48. The Court defined a "genuine" issue of fact as one for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. To defeat a motion, the non-moving party cannot "rest upon the mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The court must make "the threshold inquiry of determining whether there is the need for a trial." Id. at 250. See also O'Leary v. Accretive Health, Inc., 657 F.3d 625 (7th Cir. 2011). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for the factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson, 477 U.S. at 255; Betaco, Inc. v. Cessna Aircraft Co., 32 F.3d 1126, 1138 (7th Cir. 1994); and Sarsha v. Sears Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993)).

Second, in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court explained that Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Id. at 322-23. "[A] complete failure of proof concerning an essential element of

6

the nonmoving party's case . . . renders all other facts immaterial." Id. The court must enter judgment for the moving party when "the nonmoving party has failed to make a sufficient showing on an essential element of her case." Id. See also O'Leary v. Accretive Health, Inc., 657 F.3d 625 (7th Cir. 2011).

Civil Local Rule 56 for the Eastern District of Wisconsin provides additional guidelines for parties filing motions for summary judgment. It requires the moving party to file the following documents with its motion:

> (A) a memorandum of law; (B) a statement setting forth any material facts to which all parties have stipulated; (C) a statement of proposed material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law; and (D) any affidavits, declarations, and other materials.

Civ. L. Rule 56(b). Further, the opposing party has thirty days from service of the motion to file a response or objection, and the movant has fourteen days from service of the response to file a reply. Id. Finally, Civil Local Rule 7(e) allows the court to hear oral argument at its discretion. Civ. L. Rule 7(e).

**V.     ANALYSIS**

   A.     Summary of the Parties' Arguments

In the facts section of the summary judgment brief, the defendant asserted that the plaintiff and the defendant "were parties to a wireless telecommunications contract" at the time that the plaintiff filed for Chapter 13 relief. Dkt. No. 31 at ¶6. As a result, the defendant alleges that it "should have been listed on Plaintiff's Schedule G," and not on Schedule F. Id. at ¶¶7-8. The defendant also asserts, "The Plaintiff never served her bankruptcy schedules on

7

Verizon Wireless[1]." Id. at ¶10. On page eight of the brief, the defendant stated that it "relied upon the Plaintiff to accurately list contracts on her Schedule G,'" and that the "Plaintiff served Verizon Wireless with a copy of Chapter 13 plan promising to assume 'all . . . executory contracts identified in . . . Schedule G." Id. at 8.

According to the defendant, the plaintiff "continued to use her Verizon Wireless services after her Chapter 13 filing and continues as a contractual customer of Verizon Wireless to this day." Id. at ¶11. The defendant pointed out that the plaintiff's Chapter 13 plan stated, "The Debtor assumes all unexpired leases and executory contracts identified in the Debtor's Schedule G unless noted otherwise elsewhere." Id. at ¶12. See also Dkt. No. 30-2 at 1. Finally, according to the defendant, "The Plaintiff never paid Verizon Wireless for the amounts due prior to the bankruptcy case," and "Verizon Wireless never filed an unsecured pre-bankruptcy claim." Id. at ¶¶14-15.

The defendant argues that the plaintiff left the defendant off of Schedule G in order to "mislead the contract creditors who were served with a copy of the Chapter 13 plan." Dkt. No. 31 at 4. The defendant states, "Verizon Wireless should expect that the Plaintiff's promise, in her plan, to 'assume all . . . executory contracts identified in the Debtor's Schedule G' means what it should mean. In fact, the plaintiff identified no contracts on her Schedule G." Id. The defendant argues that because the plaintiff did not list its executory

---

[1] Although the defendant asked that its name be changed from Verizon Wireless (VAW) LLC to Cellco Partnership d/b/a Verizon Wireless, both parties use the titles "Verizon" or "Verizon Wireless" when referring to the defendant.

contract on Schedule G, the Chapter 13 bankruptcy had no effect on the pre-bankruptcy debt. Id. at 5-8. Without citing any case law to support its assertion, the defendant stated:

> For the Plaintiff to prevail in her lawsuit, she must show that: (a) her dishonest bankruptcy papers are somehow excused; (b) that the Services Agreement with Verizon Wireless was legally rejected in her bankruptcy case; and (c) her ongoing usage of the contractual services did not create a reasonable expectation by Verizon Wireless that its contract was assumed.

Id. at 7. The defendant urged the court not to allow the plaintiff "to benefit from [her] deceit." Id. at 8.

In her response, the plaintiff took issue with the defendant's allegations of deceit and dishonesty. Dkt. No. 48. The plaintiff asked the court to deny the summary judgment motion, alleging that a genuine issue of material fact existed: the parties did not agree on how the defendant "viewed [the plaintiff's] account upon receipt of Plaintiff's bankruptcy notice." Id. at 5.

According to the plaintiff, discovery as of the date of the summary judgment motion revealed that the defendant had placed a notation on the plaintiff's services account, indicating that the plaintiff had "included" the account "in a bankruptcy." Id. The plaintiff also alleged that the defendant had "created a new, post-petition account for Ms. Land to separate pre- and post-petition account charges." Id. Next, the defendant "located all pre-bankruptcy charges on Ms. Land's account and associated them with her old account that was then charged off." Id. The plaintiff alleged that the defendant had provided account notes to the plaintiff, which allegedly showed that the defendant "received enough post-petition payments to cover all-prepetition charges, but

9

[the defendant] made a voluntary decision to not apply those charges and cut a refund check to Ms. Land." Id. Finally, the plaintiff asserted that, "On September 9, 2014, Defendant Verizon independently sent a notice to Experian, Equifax, and TransUnion stating that Plaintiff owed them no money, that the debt had been discharged in bankruptcy, and asked that this information be placed on Ms. Land's credit reports." Id. The plaintiff asked the court to prohibit the defendant from now arguing that the plaintiff still owed the debt.

In its reply, the defendant stated, "The issue is not whether the Verizon service contract was assumed, but whether it was rejected." Dkt. No. 51 at 2. The defendant asked the court to determine "how to treat a contract which was neither expressly assumed nor expressly rejected." Id. The defendant noted that the Bankruptcy Code allowed a debtor to assume or reject a contract up until confirmation, and that the plaintiff never assumed or rejected this contract. Id. at 3. Because the plan did not explicitly reject or assume the contract, the defendant argued, the contract passed through the bankruptcy unaffected by the plan, its confirmation, or the discharge.

  B. <u>Discussion</u>

    i. *A genuine dispute of material fact exists regarding whether or not the defendant intentionally or willfully violated the FCRA.*

The plaintiff asserted in the complaint that the defendant willfully and intentionally violated the Fair Credit Reporting Act by failing to appropriately investigate and correct errors on the plaintiff's credit report. The FCRA "imposes a duty on credit reporting agencies to insure the accuracy of a

10

consumer's credit report." Konter v. CSC Credit Servs., Inc., 606 F. Supp. 2d 960, 966 (W.D. Wis. 2009). The FCRA also imposes duties on "furnishers of information to provide accurate information," 15 U.S.C. §1681s-2(a), and on "furnishers of information upon notice of dispute." 15 U.S.C. §16781s-2(b). If a furnisher of information "negligently violates any duty imposed by the statute, a plaintiff may collect 'actual damages,'" and "[i]f the violation is willful, statutory and punitive damages are available." Konter, 606 F. Supp. 2d at 266 (citing 15 U.S.C. §1681o and §1681n). The parties do not dispute that the defendant qualifies as a "furnisher of information" under the FCRA.

The central issue raised in the complaint is whether the defendant willfully or intentionally indicated that the plaintiff owed it a debt, when the plaintiff had listed in her Chapter 13 schedules a pre-petition debt to the defendant, the defendant had not objected to the treatment of that debt in the schedules or plan, the plaintiff had completed the plan, and the plaintiff had received a discharge of her unsecured debt. In other words, the question is whether the defendant knew or had reason to believe that its pre-petition debt had been discharged, yet allowed information to the contrary to remain on the plaintiff's credit report.

"On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for the factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted). In opposition to the defendant's motion for summary judgment, the plaintiff contends that the evidence indicates that the

11

defendant knew that the plaintiff had filed for bankruptcy, and that in its accounts, it had treated her as having both a pre-petition account and a post-petition account. Dkt. No. 47 at ¶¶1-6. Questions remain, however, about whether the defendant believed, at the time of the events alleged in the complaint, that the plaintiff no longer owed the $300 pre-petition debt. This is the most material fact to the suit, and it is in dispute. Dkt. No. 33 at ¶14; Dkt. No. 47 at ¶9. If the defendant believed that the defendant owed it no pre-petition debt, yet allowed credit reporting agencies to reflect such a debt, the plaintiff likely can prove a cause of action under the FCRA. If, on the other hand, the defendant believed that it was owed a pre-petition debt, the plaintiff likely would have difficulty proving a knowing and intentional violation, which is what she alleges in the complaint.

Because this issue of material fact remains subject to dispute, it is not appropriate for the court to grant the defendant's motion for summary judgment.

      ii.     *As a matter of law, the plaintiff received a discharge of the $300 pre-petition debt owed to the defendant.*

As discussed above, however, the defendant's motion for summary judgment does not focus on the issue alleged in the complaint. Rather, the motion argues that the plaintiff intentionally misled the defendant regarding the status of its contract with the plaintiff post-petition—in other words, that the plaintiff acted in bad faith and thus should not have received the benefit of the discharge. The court finds this issue to be a red herring, irrelevant to the allegations in the complaint.

12

The plaintiff filed for relief under Chapter 13 of the Bankruptcy Code. Chapter 13 is the chapter that allows an individual debtor to reorganize over a period of three or five years. Over the life of a Chapter 13 plan, a debtor may make payments against unsecured debts, maintain payments on secured debts, pay the arrearages on delinquent leases while maintaining ongoing lease payments, and take other actions to improve the debtor's financial position, while being protected from collection efforts by creditors.

Debtors list their unsecured debts on Schedule F of the bankruptcy schedules. Creditors may file proof of their claims. 11 U.S.C. §501. If the creditor files the proof of claim in accordance with the requirements of the Bankruptcy Code, the claim is deemed allowed unless a party objects. 11 U.S.C. §502(a). As indicated above, the plaintiff listed the defendant on her Schedule F as an unsecured creditor. The defendant also appears on the creditor mailing matrix.

In the motion for summary judgment, the defendant argues that the plaintiff did not serve notice of the bankruptcy, or the schedules, on the defendant. Dkt. No. 31 at 3, ¶10. The defendant also argues that the address on the creditor matrix—the Big Timber address—"was not an address used by Verizon Wireless for legal papers." Id. If the defendant intended to imply with this argument that the plaintiff's failure to serve the notice of the bankruptcy and the schedules prevented discharge of the debt, that argument has no merit. A bankruptcy discharge "covers every pre-petition debt, whether or not the debt is scheduled by the debtor, a proof of claim is filed, or the claim is

13

allowed by the bankruptcy court." In re Gusek, 310 B. R. 400, 402 (Bankr. E.D. Wis. 2004).

In addition, the defendant had constructive knowledge of the bankruptcy.

> If an unscheduled debt is a "garden variety debt," i.e., it does not arise from potentially nondischargeable conduct, such as fraud or malicious injury, the simple issue is whether a claims bar date was set in the bankruptcy case. If a claims bar date was set, and the unsecured creditor did not have notice *or actual knowledge of the case* in time to file a timely proof of claim, the unlisted debt is not discharged under §523(a)(3). However, if no claims bar date was set, a garden variety debt is discharged.

Id. at 403. While the court set a claims bar date in the plaintiff's case, the defendant concedes in its summary judgment brief that "[t]he Plaintiff delivered a copy of the Chapter 13 plan and its promise to assume all executory contracts listed on Schedule G to Verizon Wireless." Dkt. No. 31 at 10, ¶13. Upon receiving the Chapter 13 plan, then, the defendant had actual notice that the plaintiff had filed a bankruptcy case.

The defendant argues that the Chapter 13 plan stated that the plaintiff was assuming all unexpired leases and executory contracts "identified in the Debtor's Schedule G unless noted otherwise elsewhere." Id. at ¶12. This is true. See Dkt. No. 30-2, Exh. B at 1. In order for a creditor to determine, therefore, whether a debtor had assumed *its* lease, that creditor would have had to look at the debtor's Schedule G; the plan language made plain that the plaintiff was assuming only those leases and contracts listed on Schedule G. The plaintiff in this case did not list the defendant on either her original or amended Schedule

14

G. Thus, the defendant's argument that the plaintiff led it to believe that the plaintiff was assuming its lease is not supported by the schedules.

The defendant argues that, "[a]s a party to a contract, Verizon Wireless should have been listed on Plaintiff's Schedule G filed in her Chapter 13 case." DKt. No. 31 at 10, ¶7. It argues that, by listing the defendant as an unsecured creditor on Schedule F, rather than listing it as a party to an unexpired executory contract on Schedule G, the plaintiff intended to mislead the defendant. The defendant argues that if the plaintiff had listed the defendant in Schedule G, she either would have assumed the contract with the defendant (which would have required her to cure any pre-petition default, pursuant to 11 U.S.C. §365(b)(1) and (b)(1)(A)), or rejected the contract (allowing the defendant to terminate service). Id. at 5. Because the plaintiff did not explicitly do either of those things, and instead indicated that she had no executory contracts or leases, the defendant argues that this court should treat the contract as assumed, deem that the plaintiff continues to have a duty to cure any pre-petition default, and conclude that the $300 pre-petition debt was not discharged, that the plaintiff continues to owe it, and that any representation the defendant made or allowed to that effect was not a willful or intentional violation of the FCRA.

Section 365 of Title 11 of the United States Code governs executory contracts. It allows a party to assume or reject an executory contract, but it does not require a party to do so. The defendant urges this court to treat the executory contract as "assumed, post-confirmation." Dkt. No. 31 at 6-7. The

15

defendant cites In re Whitcomb & Kelly Mortgage, 715 F.2d 375 (7th Cir. 1983), for the proposition that "the Bankruptcy Code treats contracts as remaining 'in effect' and non-debtor parties are bound to honor them and perform." Dkt. No. 31 at 6. This case does support the assertion: it states that until a party assumes or rejects an executory contract, the bankruptcy court will preserve the *status quo*. In re Whitcomb, 715 F.2d at 378. The Seventh Circuit went on to hold, however, that a debtor can assume or reject a contract only "through an express order of the judge." Id. at 380 (internal quotation marks and citation omitted). When "[n]either the bankruptcy court nor [the debtor] exhibited any intention of assuming the contract," the Seventh Circuit "will not infer such intention." Id. The Seventh Circuit found that the bankruptcy court had not abused its discretion when it denied a creditor's request that the court require the debtor to assume or reject a contract within a specified period of time. Id.

In the Chapter 11 context, in 1982, a bankruptcy court in this district stated that Section 365 "provide[d] that a debtor may, with the court's approval, assume or reject an executory contract at any time prior to confirmation," but noted that "the Code does not specifically address the effects of inaction." Matter of Central Watch, Inc., 22 B.R. 561, 564-65 (Bankr. E.D. Wis. 1982). "Nevertheless, courts have generally held that executory contracts continue in force until expressly assumed or rejected." Id. As a result, if not assumed or rejected, the contract "remains in force and . . . passes with other

16

property of the debtor to the reorganized corporation." Id. (internal citations omitted).

The plaintiff in this case never has argued that she ceased owing a general, contractual obligation to the defendant. The plaintiff attempted only to discharge the *pre-petition* debt of $300. The defendant has not argued, or shown, that the plaintiff failed to make subsequent payments under the terms of the contract, or that the plaintiff defaulted on those post-petition obligations. The court finds that the plaintiff neither assumed nor rejected the contract and that the contract still exists post-bankruptcy. But that finding has no effect on the discharge of the pre-petition debt. It simply means that the plaintiff must continue to make payments under the terms of the agreement post-petition and post-bankruptcy—something she appears to have done.

The plaintiff makes a compelling argument in response to the defendant: this court should not allow the defendant to attack a confirmed plan. "It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan." In re Harvey, 213 F.3d 318, 321 (7th Cir. 2000) (citing 11 U.S.C. §1327(a)). Not only does this portion of the Bankruptcy Code encapsulate principles of *res judicata*, but it also protects against inefficiencies:

> [A] confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all the creditors. Bringing the various creditors' interests to the table once is difficult enough; permitting one of the creditors to launch a later attack on a confirmed plan would destroy the balance of interests created in the initial proceedings.

17

<u>Id.</u> The defendant, according to the bankruptcy docket, received electronic notice of the filing of the Chapter 13 plan, and of its treatment under that plan. It never appeared, objected, or otherwise participated in the Chapter 13 proceeding. The Code and the case law protect the debtor-plaintiff against the arguments that the defendant now makes. Therefore, as a matter of law, the court finds that the plaintiff received a discharge of the $300 pre-petition debt owed to Verizon, and finds that the plaintiff no longer owes that amount to the defendant.

> *iii. There is no proof of bad faith on the part of the plaintiff, and the defendant did not object to the discharge on that basis.*

Finally, the court addresses the defendant's argument that by listing the defendant as an unsecured creditor on Schedule F, rather than as a party to an executory contract on Schedule G, the plaintiff was deliberately attempting to mislead the defendant. The court found that issue to be a red herring, as discussed above. But even if the question of whether the plaintiff acted in bad faith were relevant to the FCRA analysis, the defendant has presented no evidence supporting the argument that the plaintiff acted in bad faith. The plaintiff listed the defendant on her schedules. She indicated that she owed the defendant money. She served her Chapter 13 plan on the defendant. It is hard for the court to see how these actions exhibit an intent to mislead the creditor. The creditor has a responsibility to review the plan, and to object to any treatment with which it disagrees. If the defendant thought it should have been listed as a party to an executory contract, rather than as an unsecured creditor, it should have objected to confirmation of the plan. It did not do so.

If the defendant had some proof that the plaintiff truly was acting in bad faith, it could have filed an adversary proceeding objecting to the dischargeability of its debt. Section 523(a) provides a list of categories of debts that are not dischargeable, including debts incurred by fraud or misrepresentation, 11 U.S.C. §523(a)(2), and as discussed above, debts not listed in the schedules, 11 U.S.C. §523(a)(3). As discussed above, the deadline for filing a nondischargeability case came and went, and the defendant did not object to the discharge of its debt. It cannot now effectuate that tardy objection through a summary judgment motion in an FCRA lawsuit. And the defendant has produced no evidence in the summary judgment proceedings supporting its claim that the plaintiff committed fraud or misrepresentation or deliberately left anything off of her schedules.

## VI. CONCLUSION

For the reasons stated above, the court **DENIES** the defendant's motion for summary judgment (Dkt. No. 28).

Dated at Milwaukee, this 26th day of October, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge